IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLINTON KAYS, | ) | CASE NO. 4:12-CV-00161 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Clinton Kays ("Plaintiff" or "Kays") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for social security disability benefits.  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

Plaintiff asserts that certain treatment records, not submitted to the ALJ or Appeals Council, are new and material evidence and he has requested that this Court order a remand under sentence six of 42 U.S.C. § 405(g) for consideration of those records.[1]  Doc. 15-1, pp. 1-2. However, for the reasons set forth herein, the undersigned finds that Plaintiff's request for a remand under sentence six of 42 U.S.C. § 405(g) is not warranted.  Further, for the reasons set forth herein, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

---

[1] The alleged "new and material" evidence consists of treatment records for the period between October 2007 and September 2008.  Doc. 15-1, pp. 1-2; Doc. 15-2.  The Court notes that treatment records from 2007 and February 6, 2008, which were contained in records before the ALJ and Appeals Council, are among the records submitted by the Plaintiff as "new and material" evidence. Doc. 15-2, pp. 3-6; Tr. 164-170, 175-176.

## I.  Procedural History

On or about June 23, 2008, Kays filed applications for Disability Insurance Benefits ("DIB") (Tr. 13, 50, 53, 87, 102) and Supplemental Social Security Income ("SSI") (Tr. 13, 51-52, 87).  Kays alleged a disability onset date of January 1, 2004.  Tr.  87.  He alleged disability based on severe and chronic headaches and a lump on his back.  Tr. 57, 62, 64, 106.  Following initial denials (Tr. 50-53, 54-59), and denials upon reconsideration (Tr. 62-66), Kays requested a hearing (Tr. 67).  On July 29, 2010, Administrative Law Judge Douglas Cohen ("ALJ") conducted a hearing.  Tr. 24-49.   Notwithstanding the ALJ's explanation to Plaintiff of his right to representation and an opportunity to have the hearing continued to allow him to obtain representation, Plaintiff elected to proceed without counsel at the hearing.  Tr. 26-28, 86.

On November 22, 2010, the ALJ issued a partially favorable decision.  Tr. 10-23.  The ALJ determined that, based on Plaintiff's application for DIB, Kays had not been disabled through December 31, 2008, Kays' date last insured.  Tr. 20.  However, the ALJ also determined that, based on Plaintiff's application for SSI, Kays had been disabled beginning on February 11, 2009.  Tr. 20.

Through counsel, Kays requested review of the ALJ's decision by the Appeals Council.[2] Tr. 9.  On November 25, 2011, the Appeals Council denied Kays' request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-5.

On appeal to this Court, Plaintiff has now submitted with his Reply Brief allegedly "new and material" records for the period between October 2007 and September 2008 and he has

---

[2] On May 13, 2011, counsel submitted additional medical records, dated July 6, 2010, through September 24, 2010, to the Appeals Council.  Tr. 204-212.  On September 10, 2011, the Appeals Council provided counsel with a further opportunity to provide new and material evidence relating to the issues considered at the administrative hearing.  Tr. 6-8.  However, Plaintiff submitted no additional medical records to the Appeals Council.

requested that this case be remanded for consideration of those records, which were not presented to the ALJ.  Doc. 15-1, Doc. 15-2.  Plaintiff also seeks reversal and remand on the basis that the ALJ did not fairly develop the record and that the ALJ's decision is not supported by substantial evidence.  Doc. 13.

## II. Evidence

### A.  Personal and Vocational Evidence

Kays was born on March 27, 1957.  Tr. 87.  He is married and has no children.[3]  Tr. 41, 44.  He lives with his wife in his parents' home.  Tr. 41.  Kays has a high school education.  Tr. 29.  He last worked full-time in 2003 as a warehouse laborer at K-mart, unloading and loading trucks.[4]  Tr. 29, 45.  According to Kays, he was terminated from his job at K-mart due to absenteeism.  Tr. 29.  Prior to working as a warehouse laborer, he worked as a maintenance mechanic for approximately 10 years.  Tr. 33, 45.  Kays stated he was terminated from his job as a maintenance mechanic and collected unemployment compensation.  Tr. 33.

### B.  Medical Evidence[5]

#### 1.     Medical Evidence prior to December 2008 (pre-disability)

In 2007, Plaintiff began treatment at St. Elizabeth for his headaches.  Tr. 31, 35, 164-178.  On November 12, 2007, Kays underwent a diagnostic imaging test of his cervical spine based on a diagnosis of pain.  Tr. 140, 192.  The results of the test showed mild straightening, mild

---

[3] Kays' wife is older and has been receiving social security disability since 2008 based on a right knee impairment.  Tr. 41.  Kays noted that, when awarding his wife benefits, the Social Security Administration took into consideration her "age, education, and work experience."  Tr. 41.

[4] In 2005, Kays worked a part-time job for two weeks.  Tr. 29.

[5] Because the undersigned's Report & Recommendation includes a recommendation that Plaintiff's request for a sentence six remand be denied, consideration of evidence submitted in connection with Plaintiff's Reply Brief (Doc. 15-2; 15-3) that had not previously been submitted to the ALJ is not warranted, and, therefore, is not included in the medical evidence summary.

narrowing at C5-C6 with a small spur, degenerative changes and no fracture, dislocation or destructive lesion.  Tr. 140, 192.  On November 15, 2007, Kays underwent a brain MRI without contrast based on a diagnosis of headaches.  Tr. 139, 191.  There was no evidence of an acute infarction or parenchymal hemmorage but there was an abnormal signal and dysplastic parenchyma at the tip of the left temporal lobe.  Tr. 139, 191.  The radiologist recommended an MRI with contrast for further assessment.  Tr. 139, 191.  During a follow up visit at St. Elizabeth regarding the November 15, 2007, MRI, Plaintiff's doctor advised him that he should obtain the MRI with contrast, begin medication and have a sleep study done.  Tr. 169.   Plaintiff reported that he was not using Tylenol because it was not helping him.  Tr. 169.

On November 28, 2007, Plaintiff was referred for a surgical consult regarding a lump on his back.  Tr. 171.  The lump had been on his back for 4-5 years but had recently gotten larger. Tr. 171.  Plaintiff reported experiencing pain constantly and rated his pain level at a 4 out of a 10.  Tr. 171.  He noted that his pain was aggravated by activity.  Tr. 171. The surgeon opined that the lump was likely lipoma and he recommended excision.  Tr. 174.

On February 8, 2008, Plaintiff was seen again at St. Elizabeth for continuing headaches. Tr. 167.  Kays reported that his pain was constant and fluctuated in intensity.  Tr. 167. Treatment notes from his February 8, 2008, visit indicate that Plaintiff had not followed any recommendations from the prior visit, including the MRI with contrast, recommended medications, and sleep study.  Tr. 168.  Therefore, the doctors indicated that it was difficult for them to do anything further for Plaintiff.  Tr. 168.  Although the doctors again advised Plaintiff of the need for an MRI with contrast to rule out serious causes of his headaches, he declined the recommended MRI. Tr. 167.   A neurological consult was authorized but it was noted that the

doctor would like to see Plaintiff take responsibility and follow-up with the tests and medication. Tr. 168.

## 2. Medical Evidence on or after February 11, 2009 (post-disability)

On February 11, 2009, Kays was seen at St. Elizabeth for a "regular visit." Tr. 184. Treatment notes reflect that Kays had still not undergone the recommended MRI with contrast. Tr. 184. The notes also reflect that Kays reported having financial troubles in obtaining the test. Tr. 184. A social worker was assigned to help him with the issue of obtaining the recommended MRI. Tr. 184.

On May 13, 2009, Kays was at St. Elizabeth for a follow up visit. Tr. 182. He reported neck pain with numbness of his left arm. Tr. 182. Treatment notes again reflect that Kays had not followed the doctor's recommendation for tests and also reflect that Plaintiff may not be able to afford the MRI with contrast. Tr. 182. Kays asked that a form be completed indicating that he is unable to work. Tr. 182. Treatment notes dated June 17, 2009, state that Plaintiff was very upset that his Job & Family paperwork was not filled out. Tr. 183.

On September 11, 2009, Plaintiff obtained the MRI with contrast. Tr. 195-196. He also underwent an intracranial MRA without contrast, and MRI of the spine without contrast. Tr. 195-196. Some abnormalities were shown, and the overall impression from the tests was "Normal MRI brain. Normal intracranial MRA. Midcervical degenerative interspace changes with foraminal encroachment." Tr. 195-196.

On September 25, 2009, in furtherance of Plaintiff's disability claim, his new treating physician Dr. Roderick C. Spears, M.D., of the Cleveland Clinic, wrote a letter stating that Kays:

> . . . has continuous headaches and neck pain that are severe. The patient
> has herniated disc of the cervical spine which are likely contributing to his

> chronic headaches.  He reports the pain as severe resulting in significant
> disability resulting in him being unable to work.

 Tr. 190.

Plaintiff was seen again by Dr. Spears on July 6, 2010.  Tr. 200.  Plaintiff continued to

have headaches and neck pain and reported shooting pain down his left arm and intermittent loss

of sensation in his left hand.  Tr. 200.  Dr. Spears prescribed pain medication with no other

recommended course of treatment.  Tr. 202.

### C.  Testimonial Evidence

#### 1.       Kays' Testimony

Kays was unrepresented by counsel at the administrative hearing and, following the

ALJ's explanation of his right to obtain representation, he waived his right to representation,

both orally and in writing.  Tr. 26-28, 86.

Kays testified that, while employed at K-mart, he had medical insurance coverage for

about nine months but had not had it since.[6]  Tr. 29-30.  He testified that his absenteeism at K-

mart, which led to his termination, was related to his severe headaches.  Tr. 32.  To obtain

medical care, he sought treatment at St. Elizabeth Medical Center ("St. Elizabeth"), a free clinic.

Tr. 31.  Kays indicated that St. Elizabeth provided free treatment, including MRIs and x-rays, but

that medicine and specialists were not covered.  Tr. 31.

He testified that his pain is related to degeneration of his spine and his severe headaches.

Tr. 32.  Kays stated that on average he has headaches three times per week and they can last up

to two days.  Tr. 38-39.  He could not say how often his headaches had been occurring back in

2007, but noted that his headaches were more frequent now.  Tr. 40.  When he is experiencing a

---

[6] Although employed longer than nine months at K-mart, he did not have medical insurance coverage the entire time because the cost of the insurance coverage was too high.  Tr. 32.

headache, Kays reported that he is in constant pain and usually lies down on the couch or in bed. Tr. 39-40.  The more active he is, the more his pain is aggravated.  Tr. 40.

His parents, with whom he resides, are retired and in their seventies.  Tr. 42.  Kays stated that his parents can take care of themselves although he tries to take care of things around the house including cutting the grass.  Tr. 42-43.  Kays is able to drive.  Tr. 44.

In response to the ALJ's question about why Kays declined to follow treatment recommendations, including having an MRI with contrast, taking medication and conducting a sleep study, Kays testified that he stopped his treatment at St. Elizabeth because the doctors told him that they could not diagnose him properly and he needed to see a neurologist but there was no neurologist on staff at St. Elizabeth.  Tr. 34-35.  He indicated that he tried to find a neurologist near him and, at first, no one would see him without insurance but he finally located a neurologist at Cleveland Clinic and began treatment there in 2009.[7]  Tr. 34-35, 36.  In response to follow-up questions regarding why he did not proceed with the MRI with contrast, he indicated that he told the doctors, "Well if you can't diagnose me why are you asking for the test?"  Tr. 35.   And, in response to follow-up questions regarding why he did not take the medication that the doctors prescribed, he said he did not take the medication because the doctors gave it to him for migraines but he did not think that migraines were the cause of his headaches. Tr. 35.  Also, he stated that he did not want to risk taking the medication because of a side effect he had read about regarding the medication.[8]  Tr. 35-36.

The ALJ noted that there was a gap in treatment from February 2008 until February 2009. Tr. 35.  Kays did not dispute the ALJ's assessment of his treatment history or indicate that there

---

[7] Kays indicated that the Cleveland Clinic treated him even though he could not pay because he was in the process of applying for Medicaid.  Tr. 38.

[8] He stated that a prior MRI had shown problems with his cerebral blood vessels and he had read that a side effect of Imitrex was restrictions in the blood vessels.  Tr. 35-36.

should be records from that period of time.  When discussing his treatment at the Cleveland

Clinic in 2009 and 2010, Kays recounted the various visits he had had and, based on that

testimony, the ALJ determined and informed Kays that additional records from the Cleveland

Clinic would have to be requested.  Tr. 36-37.

### 2.     Vocational Expert's Testimony

Vocational Expert George Starosta ("VE") testified at the hearing.  Tr. 45-48.  The VE

indicated that Kays' prior job of warehouse laborer was a medium unskilled job and his prior job

as maintenance mechanic was a heavy skilled job.  Tr. 45.  The ALJ asked the VE to assume an

individual with the following residual functional capacity ("RFC"): the individual is able to

perform light work, with occasional climbing (ramps and stairs only) and with occasional

balancing, stooping, crouching, crawling and kneeling but with no concentrated exposure to dust,

fumes, odors, gases, environments with poor ventilation, wetness, humidity or   temperature

extremes.  Tr. 46.  The VE testified that such an individual would be unable to perform Kays'

past work but would be able to perform jobs such as cleaner (light unskilled job with 3,000,000

jobs available); laundry folder (light unskilled job with 100,000 jobs available); and stocker

(light unskilled job with 400,000 jobs available).  Tr. 46.   When the ALJ added to the

hypothetical the fact that, because of symptoms from his or her impairment, such an individual

would be off task more than 10% of the workday on a consistent basis, the VE testified that the

noted jobs would be eliminated.  Tr. 46-47.  Also, the VE testified that, if such an individual was

absent more than a day and a half per month on a consistent basis, there would be no jobs

available to such an individual.  Tr. 47-48.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.  If the claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is

capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In his November 22, 2010, decision, the ALJ made the following findings:

1.    Kays met the insured status requirements through December 31, 2008. Tr. 15.

2.    Kays had not been engaged in substantial gainful activity since the alleged onset date of disability, January 1, 2004.  Tr. 15.

3.    Since January 1, 2004, Kays had the following severe impairments: migraine headaches and degenerative disc disease of the cervical spine. Tr. 15.

4.    Since January 1, 2004, Kays had not had an impairment or combination of impairments that met or equaled a Listing.[9] Tr. 15-16.

5.    *Prior to* February 1, 2009, Kays had the RFC to perform light work except he could occasionally climb (ramps and stairs only), balance, stoop, crouch, crawl, and kneel; and could not be exposed to concentrations of dust fumes, odors, gases, environments with poor ventilation, wetness, humidity or temperature exposures.  Tr. 16-17 (emphasis supplied)

6.    *Beginning on* February 1, 2009, Kays had the RFC to perform light work except he could occasionally climb (ramps and stairs only), balance,

---

[9] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

stoop, crouch, crawl, and kneel; and could not be exposed to concentrations of dust fumes, odors, gases, environments with poor ventilation, wetness, humidity or temperature exposures; and he would be off task more than 10% on a consistent basis. Tr. 17-18 (emphasis supplied).

7.    Kays is unable to perform any past relevant work.  Tr. 18.

8.    Prior to the established disability onset date, Kays was an individual closely approaching advanced age and Kays' age category has not changed since the established disability onset date. Tr. 18.

9.    Kays has at least a high school education and is able to communicate in English.  Tr. 18.

10.   Prior to February 11, 2009, transferability of job skills was not material to the determination of disability and, beginning on February 11, 2009, Kays has not been able to transfer job skills to other occupations. Tr. 18.

11.   *Prior to* February 11, 2009, considering Kays' age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Kays could have performed: cleaner, laundry folder or stocker.  Tr. 18-19 (emphasis supplied).

12.   *Beginning on* February 11, 2009, considering Kays' age, education, work experience and RFC, there are no jobs that exist in significant numbers in the national economy that Kays can perform.  Tr. 19 (emphasis supplied).

Based on the foregoing, the ALJ determined that Kays was not disabled prior to February 11, 2009, but became disabled beginning on February 11, 2009, and continued to be disabled through the date of the decision.  Tr.  19-20.   Kays was not under a disability through December 31, 2008, the date last insured.  Tr. 20.

## V. Parties' Arguments

### A.    Plaintiff's Arguments

Plaintiff seeks reversal and remand for consideration of evidence not previously submitted to the ALJ.  Doc. 15-1, Doc. 15-2.  Plaintiff also asserts that the ALJ had a heightened duty to develop a full and fair record and that the ALJ failed to fairly develop the record and

failed to satisfy that heightened duty.  Doc. 13, pp. 7-10.  Finally, Plaintiff asserts that the ALJ's finding that Plaintiff was not disabled prior to December 31, 2008, is not supported by substantial evidence, and the ALJ arbitrarily chose a disability onset date of February 11, 2009. Doc. 13, pp. 10-12.  He asserts that, in reaching his decision, the ALJ's assessment of his non-compliance with prescribed treatment was contrary to SSR 82-59 and, thus, subject to reversal. Doc. 13, pp. 10-12.

**B.      Defendant's Arguments**

The Commissioner asserts that the ALJ fulfilled his duty to adequately develop the record.  Doc. 14, pp. 11-15.  Defendant asserts that there was no heightened duty to develop the record and that information provided by Plaintiff did not suggest that he received treatment during the period of February 2008 through February 2009.  Doc. 14, pp. 11-15.  Further, the Commissioner asserts that the ALJ's finding that Plaintiff was not disabled prior to December 31, 2008, is supported by substantial evidence and SSR 82-59 is inapplicable to this case.  Doc. 14, pp. 15-19.  Moreover, Defendant asserts that, even if SSR 82-59 is applicable, the ALJ did not err because his finding was not based solely on non-compliance with recommended medical treatment.  Doc. 14, pp. 15-19.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028,

1030 (6th Cir. 1992).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.**     **Plaintiff's request for a sentence six remand is not warranted.**

Plaintiff has requested a remand for consideration of evidence not submitted to the ALJ or the Appeals Council.  Doc. 15-1.  Plaintiff asserts that treatment records between October 2007 and September 2008 (Doc. 15-2) ("new records"), are new and material and thus Plaintiff would like such records considered on remand as new and material evidence. Doc. 15-1, pp. 1-2.

The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ.  *See Jones v. Commissioner*, 336 F.3d 469, 478 (6th Cir. 2003); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs*., 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98–1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ.").   The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision.  *See, e.g., Hollon v. Commissioner*, 447 F.3d 477, 486 (6th Cir. 2006).  The court cannot consider evidence that was not submitted to the ALJ in the sentence four context; it only can consider such evidence in determining whether a

sentence six remand is appropriate.  *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007);
*Foster*, 279 F.3d at 357.

The plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) to demonstrate that
the evidence he now presents in support of a remand is "new" and "material," and that there was
"good cause" for his failure to present this evidence in the prior proceeding.  *See Hollon*, 447
F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010) (although the
material that the claimant sought to introduce was "new," the claimant failed to meet her burden
of showing "good cause" for failure to submit materials and that the evidence was "material.").
Evidence is "*new* only if it was 'not in existence or available to the claimant at the time of the
administrative proceeding.'"  *Ferguson*, 628 F.3d at 276 (internal citations omitted and emphasis
supplied).  "[E]vidence is *material* only if there is a reasonable probability that the Secretary
would have reached a different disposition of the disability claim if presented with the new
evidence."  *Id.* (internal quotations and citations omitted and emphasis supplied) "A claimant
shows *good cause* by demonstrating a reasonable justification for the failure to acquire and
present the evidence for inclusion in the hearing before the ALJ."  *Id.* (internal citations omitted
and emphasis supplied).

Before evaluating each of the requirements for a sentence six remand, the Court notes
that not only were the "new records" (Doc. 15-2) not submitted to the ALJ when the Plaintiff
was unrepresented, but they also were not submitted to the Appeals Council when Plaintiff <u>was</u>
represented by counsel.  The first time that Plaintiff submitted the "new records" (Doc. 15-2)
was when he filed his Reply Brief in this Court on August 28, 2012.  Doc. 15-1.

Kays has not carried his burden of establishing his entitlement to a sentence six remand.
First, he has failed to establish that the material that he seeks to introduce is "new."  None of the

records submitted in connection with this appeal post-date the July 29, 2010, hearing before the ALJ (Doc. 15-2, Doc. 15-3); none of the "new records" (Doc. 15-2) was unavailable to Plaintiff; and some of the "new records" from 2007 and February 6, 2008, were requested by the Social Security Administration and already part of the administrative record at the time of the July 29, 2010, hearing (Doc. 15-2, pp. 3-6; Tr. 23, 164-170, 175-176).

Second, Plaintiff has failed to explain how the 2008 records are "material."  Plaintiff argues that, if the "new records" (Doc. 15-2) had been obtained by the ALJ, those records would have shown that Plaintiff, contrary to the ALJ's findings, did receive treatment between February 2008 and February 2009.  Doc. 13, pp. 7-12; Doc. 15-1.  However, Plaintiff does not point to what in the "new records" shows that he was disabled and, because the ALJ's decision was not based entirely upon a lack of treatment, Plaintiff has not demonstrated that there is a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence.

Third, Plaintiff has failed to show "good cause" for his failure to submit the "new records" to the ALJ.  While Plaintiff seems to argue that his "good cause" is the ALJ's failure to fully and fairly develop the record, the undersigned finds, as discussed more fully below, that the ALJ did fulfill his obligation to develop the record in this case. *See Bass*, 499 F.3d at 514 (the ALJ's development of the record was sufficient and not a basis for Plaintiff to show "good cause" for not submitting records earlier).   Even if Plaintiff could show that the ALJ failed to adequately develop the record, the Plaintiff, who was represented by counsel at the time his request for review by the Appeals Council was filed, has failed to show good cause why the "new records" (Doc. 15-2) were not submitted either to the ALJ or to the Appeals Council.  Doc. 15-1.   Plaintiff asserts that, on April 26, 2011, approximately four (4) months after he obtained

counsel, his counsel made a request for all medical records from St. Elizabeth.  Doc. 15-1, p. 2.

In response to that request, St. Elizabeth sent Plaintiff's counsel records that apparently were

duplicative of 2007 records already submitted during earlier administrative proceedings.  Tr. 15-

1, pp. 2-3.  According to Plaintiff, it was only later that a more complete set of records, including

the "new records" (Doc. 15-2), were received by counsel.  Doc. 15-1, pp. 2-3.  However,

Plaintiff does not state when the "complete" set of records was received.   Also, as more fully

discussed below, Plaintiff provides no reason why he did not obtain the "new records" after the

ALJ stated that he saw a gap in treatment from February 2008 until February 2009.  Tr. 35.

For the foregoing reasons, Plaintiff is not entitled to a sentence six remand for the

purpose of considering additional evidence not submitted to the ALJ and the Court will not

consider any evidence that was not in the record when the ALJ issued his decision.

**B.**      **The ALJ did fully develop the record.**

Kays argues that his case should be remanded because the ALJ did not fully and fairly

develop the record.  Doc. 13, pp. 7-10.  Relying upon *Lashley v. Secretary of HHS*, 708 F.2d

1048 (6th Cir. 1983), Plaintiff states that, in this case, "special circumstances" existed such that

the ALJ was under a heightened duty to develop the record.  Doc. 13, pp. 7-10.   Plaintiff

proceeds to acknowledge that "special circumstances" exist "when a claimant is (1) without

counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing

procedures."  *Wilson v. Comm'r of Soc. Sec.*, 280 F. Appx. 456, 459 (6th Cir. 2008).  Absent such

"special circumstances," a "claimant bears the ultimate burden to prove by sufficient evidence

that she is entitled to disability benefits."  *Nabours v. Comm'r of Soc. Sec.*, 50 F. Appx. 272, 275

(6th Cir. 2002) (citing 20 C.F.R. § 404.1512(a) requiring a claimant to furnish medical and other

evidence that can be used to reach a conclusion regarding the claimant's medical impairment(s)).

During the hearing, the ALJ explained to Plaintiff that he had a right to representation and, following that explanation, Plaintiff, verbally and in writing, waived his right to representation.  Tr. 26-28, 86.  Following the ALJ's decision, the Plaintiff obtained counsel.  Tr. 9.  Thus, other than being unrepresented by counsel at the time of the hearing, the Plaintiff has failed to demonstrate, or even argue, that he was incapable of presenting an effective case or unfamiliar with hearing procedures.  During the hearing, Plaintiff testified that he can read and write and perform simple math such as counting change.  Tr. 29.  He has a high school education.  Tr. 29.  He held a skilled job as a maintenance mechanic.  Tr. 45.  He was capable of answering questions during the hearing and did not demonstrate any problems with hearing or understanding the administrative process.  Tr. 24-49.  In fact, he showed an understanding of the process when he relayed to the ALJ that his wife had been receiving social security disability benefits for about 2 years and, using social security disability terminology, he stated that, when she was awarded benefits, "[t]hey took into consideration her age, education, and work experience."  Tr. 41.  Also, when given an opportunity to question the VE, the Plaintiff noted that he had no questions because the ALJ had posed the same question that he had planned to ask.  Tr. 47-48.  At the conclusion of the hearing, Plaintiff inquired about the time line for getting additional records from the Cleveland Clinic.  Tr. 48.  The foregoing demonstrates that, although Plaintiff was unrepresented by counsel at the time of the hearing, there is no basis for imposing a heightened duty on the ALJ in this case.  Accordingly, the burden of proving his disability remained with Kays.  *See e.g. Wilson*, 280 F. Appx. at 459 (because the transcript disclosed that the claimant maintained the ability to grasp the proceedings and could adequately present her case to the ALJ, the fact that the claimant chose to proceed without counsel was not a basis to impose a heightened duty upon the ALJ and the claimant bore the ultimate burden of proving her

disability); *Nabours*, 50 F. Appx. at 275-276 (finding that, where the record showed no clear problems with the claimant's ability to present her case, no indication that the claimant was taken advantage of when she waived representation or that the absence of counsel prevented full development of her claims, the absence of counsel was not a basis to impose a heightened duty upon the ALJ).

Additionally, as shown below, Plaintiff has not established that there was a failure, on the part of the Social Security Administration or the ALJ, to adequately develop the record.  Rather, any failure to develop the record resulted from Plaintiff's own failure to provide sufficient evidence to support his claim.  Plaintiff argues that his statement to the Social Security Administration ("SSA") that his next scheduled visit at St. Elizabeth's was in July 2008 demonstrates that the SSA erred in not requesting treatment records for July 2008 through February 2009.  Doc. 13, pp. 8-9.  However, following that statement, as part of his request for reconsideration, Plaintiff reported that, since the June 23, 2008, disability report, he had first returned to St. Elizabeth in February 2009.  Tr. 124, 127.   The SSA requested documents from St. Elizabeth on more than one occasion and the SSA's requests were consistent with the information supplied by the Plaintiff.  On July 10, 2008, the SSA made a request for records from St. Elizabeth.  Tr. 165.  St. Elizabeth provided records in response to this request including records from 2007 and records dated February 6, 2008.  Tr. 165-178.  Later, on May 14, 2009, the SSA requested medical records from St. Elizabeth beginning February 2009, the date reported by the Plaintiff, as the date he had first returned to St. Elizabeth since June 23, 2008.  Tr. 180.

Even if the SSA did err in not requesting medical records for the time period July 2008 through February 2009, Plaintiff was provided with opportunities to advise the agency and/or the

ALJ that there were missing treatment records but he failed to do so.  For example, questions and answers during the administrative hearing regarding Plaintiff's treatment at the Cleveland Clinic led the ALJ to realize that there were some missing Cleveland Clinic records and the ALJ indicated that he would obtain those records.[10]  Tr. 36-37, 48.  When the ALJ noted that he saw a gap in treatment records from February 2008 until February 2009, Plaintiff did not advise the ALJ that he had received treatment during that period of time.  Tr. 35.  Additionally, on April 6, 2010, the Social Security Administration sent Plaintiff a CD with copies of documents contained in the record along with an opportunity, and responsibility, to provide medical evidence not already in the file.  Tr. 151-152.  Yet, until submission of his Reply Brief to this Court in 2012, neither Plaintiff nor his counsel provided additional evidence of treatment for the period of time between February 2008 and February 2009.[11]  Notwithstanding Plaintiff's failure to supply all medical evidence, the ALJ thoroughly examined the Plaintiff regarding his medical conditions, treatment and reasons for foregoing various treatment recommendations.  Tr. 28-44.

Based on the foregoing, the undersigned finds no basis to reverse and remand this matter on the ground that the ALJ failed to fully and fairly develop the record.

**C.     The ALJ properly considered Plaintiff's non-compliance with treatment recommendations and the ALJ's decision is supported by substantial evidence.**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and asserts that the ALJ arbitrarily chose February 11, 2009, as his disability onset date.  He further

---

[10] Plaintiff's argument is not based on a claim that the ALJ failed to obtain or consider records from the Cleveland Clinic.

[11] On May 13, 2011, Plaintiff's counsel supplied additional medical evidence from the Cleveland Clinic dated July 6, 2010, through September 24, 2010.  Tr. 204-212.  However, on September 10, 2011, when the Social Security Administration provided another opportunity to provide additional new and material evidence, Plaintiff submitted no further medical evidence.  Tr. 6.

argues that the ALJ failed to comply with SSR 82-59 because the ALJ did not make a

determination as to whether or not his failure to follow prescribed treatment was justified.[12]

The ALJ did not arbitrarily choose February 11, 2009, as Plaintiff's disability onset date.

The disability onset date is the date that Plaintiff resumed treatment for his headaches.[13]  Tr. 17,

184.  As noted in his decision, the ALJ determined that, after Kays' February 11, 2009, visit, he

continued with treatment in May 2009 and obtained an MRI/MRA in September 2009.  Tr. 17,

182-183, 184, 195.  The ALJ noted that the Plaintiff had treatment by a specialist, Dr. Spears,

and considered Dr. Spears' September 25, 2009, opinion that Plaintiff had a herniated disc of the

cervical spine which was likely causing his chronic headaches and an inability to work.  Tr. 17-

18, 190.   The ALJ also considered additional treatment at St. Elizabeth in 2009 and a 2009

cervical spine MRI in reaching his conclusion that Plaintiff became disabled beginning February

11, 2009.  Tr. 17-18, 182-183, 195-196.

Moreover, the undersigned finds that the ALJ's decision that Kays was not disabled prior

to December 31, 2008, is supported by substantial evidence.  The ALJ reached his conclusion

after assessing Plaintiff's credibility.  In performing his credibility assessment, the ALJ

considered: Plaintiff's daily activities, i.e, his ability to care for himself, perform household

chores, mow the lawn and drive; Plaintiff's decision to decline medication and not follow

treatment recommendations; and Plaintiff's gap in treatment (the ALJ found that treatment did

not resume until February 2009).  Tr. 16-17.  Although the ALJ found Plaintiff's credibility to be

generally good, the ALJ found that, to the extent inconsistent with the RFC, Kays' statements

---

[12] The Court notes an inconsistency in Plaintiff's reasoning regarding the applicability of SSR 82-59 to this case. Plaintiff takes the position that an MRI is not treatment and therefore the ALJ's assessment that Plaintiff's refusal to undergo the MRI with contrast was non-compliance was inappropriate.  However, Plaintiff then proceeds to argue that the ALJ erred in not following a social security Ruling which applies to findings of failures to follow treatment recommendations.

[13] As contained in and supported by the medical evidence submitted to the ALJ.

regarding the intensity, persistence and limiting effects of his symptoms were not credible.  Tr. 16-17.  The ALJ also considered the medical evidence prior to December 31, 2008, including a 2007 brain MRI and a 2007 cervical spine x-ray.  Tr. 17.  In considering the medical evidence, the ALJ noted that, although Kays was advised to obtain another MRI, take medication and undergo a sleep study, he declined those recommendations yet continued to complain of constant headache pain.  Tr. 17.  The ALJ also found that Plaintiff did not return for follow up treatment until February 2009.  Tr. 17.  The ALJ also relied upon the fact that no physician had opined that Plaintiff was unable to work.[14]  Tr. 17.  The ALJ also noted Plaintiff's refusal to attend a consultative examination.[15]  Tr. 17, 62, 64.

Rather than point to evidence that establishes his disability prior to December 31, 2008, Kays relies upon SSR 82-59 in an attempt to demonstrate that the ALJ's conclusion that he was not disabled prior to December 31, 2008, is not supported by substantial evidence.  Doc. 13, pp. 10-12.  SSR 82-59 provides that a claimant "who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability." Social Security Ruling SSR No. 85-29, 1992 SSR LEXIS 25, *1 (1982).  Plaintiff asserts that, because the ALJ did not inquire into or determine whether Plaintiff's non-compliance was justifiable, this Court must reverse and remand for such a determination.[16]  Doc. 13, p. 12.  The

---

[14] It was not until September 25, 2009, that Dr. Spears opined that Plaintiff had a herniated disc in the cervical spine and Plaintiff could not work.  Tr. 190.

[15] As part of his request for reconsideration, the State agency requested that Plaintiff attend a consultative examination.  Tr. 62, 64.  However, Plaintiff refused, and indicated to that he wanted a decision made based on the evidence in the file.  Tr. 62, 64.

[16] Plaintiff reasserts his argument that the ALJ was under a heightened duty because Plaintiff was unrepresented.  However, as set forth above, the ALJ was not under a heightened duty.

Commissioner argues that Plaintiff's reliance upon SSR 82-59 assumes that there was a prior finding of disability that was undone by Plaintiff's non-compliance with treatment recommendations.  However, the ALJ determined that there was no disability prior December 31, 2008.  Doc. 14, pp. 17-18.  This case is unlike *Koch v. Astrue*, 2011 WL 1119759 (N.D. Ohio 2011) where the parties jointly sought and obtained an order of remand due to the failure of the ALJ to adhere to SSR 82-59.  Additionally, here, the ALJ did not find that Plaintiff was disabled prior to December 31, 2008, but would not have been disabled had he followed treatment recommendations.  Accordingly, the undersigned finds SSR 82-59 inapplicable in this case.

Further, the ALJ's consideration of Plaintiff's failure to obtain a follow up MRI, take prescribed medication and undergo a sleep study was not the sole basis for the ALJ's finding of no disability for the period prior to December 31, 2008, and the ALJ did ask Plaintiff about his reasons for non-compliance. Thus, even if SSR 82-59 were applicable, the undersigned finds that any failure to specifically adhere to the requirements set forth therein was harmless.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing application of harmless error in social security cases).  In support of his argument that the ALJ erred in not adhering to SSR 82-59, Plaintiff directs the Court to hearing testimony regarding his lack of medical insurance (Tr. 30), and asserts that the reason he refused the additional MRI was because the test was expensive and he had no insurance coverage.  Doc. 13, pp. 11-12.  While an inability to afford prescribed treatment may justify non-compliance under SSR 82-59, a review of the hearing testimony shows that lack of ability to pay for the test was not the reason Kay provided at the hearing.[17]

---

[17] While Plaintiff testified about his lack of medical insurance (Tr. 30), that testimony was not in response to the ALJ's questions concerning his reasons for not following through on recommended treatment (Tr. 34-35).

Kays testified that he did not undergo the MRI with contrast, take prescription medication or undergo a sleep study because he was told by his treating doctors that they could not properly diagnose him and he needed to see a neurologist.  Tr. 34-35.  Moreover, when talking about the treatment he received at St. Elizabeth, Plaintiff indicated that St. Elizabeth was a free clinic and that was how he was able to get his MRI. Tr. 31.  Regarding the Imitrex prescription, Plaintiff states, in his Brief, that his reason for refusing to take Imitrex was justifiable but he does not state what that reason was.  Doc. 13, p. 12.  In his hearing testimony, he stated that his doctors prescribed Imitrex because they believed that his headaches were from migraines but, since he did not agree with his doctors that his headaches were from migraines and because he was concerned about side effects from Imitrex, he did not take the medication.  Tr. 35-36.   Because the ALJ's decision was not based solely on Plaintiff's non-compliance with treatment recommendations and because, as required by SSR 89-52, the ALJ inquired and elicited testimony concerning Plaintiff's reasons for not following treatment recommendations, the undersigned finds that, even if SSR 82-59 were applicable, any error in failing to follow to exact procedures in SSR 82-59 is not cause for reversal.

For the reasons set forth above, the undersigned finds that the ALJ's findings of no disability prior to December 31, 2008, and disability beginning on February 11, 2009, are supported by substantial evidence.  Thus, reversal is not warranted.

### VII. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

Dated:  January 16, 2013

Kathleen B. Burke
United States Magistrate Judge

23

## **<u>OBJECTIONS</u>**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).